Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3614 | **DATE** | 9/10/2002 |
| **CASE TITLE** | Hardy vs. Aguinaldo | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]    For the reasons set forth on the attached order, the Court denies defendants' motion for summary judgment (9) and also denies plaintiff's motion for a formal order regarding access to the law library (21). Counsel for defendant Miller is directed to advise the appropriate prison officials of the Court's request that they grant Hardy reasonable use of the resources of the prison library during the pendency of this action.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 1 1 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 27 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| OR | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NEDRICK J. HARDY SR., #B-50437    )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )   Case No. 02 C 3614
                                   )
DR. E.P. AGUINALDO and             )
BARBARA MILLER,                    )
                                   )
        Defendants.                )

DOCKETED
SEP 1 1 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Nedrick Hardy, a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Hardy claims that the defendants, health care providers at the Stateville Correctional Center, violated his constitutional rights by delaying or denying medical attention for his broken hand and denying him adequate treatment for a severe stomach ailment. Defendants have moved for summary judgment. For the reasons stated below, the Court denies defendants' motion.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding the motion, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Walker v. Northeast Regional Commuter Railroad Corp.*, 225 F.3d 895, 897 (7th Cir. 2000).

### Facts

Hardy has been confined at the Stateville Correctional Center at all times relevant to this lawsuit. Cplt., p. 2, Part I. Defendant Barbara Miller is the administrator of Stateville's health

care unit. Defendant Dr. Euaristo Aguinaldo is a staff physician at Stateville. *Id.*, Part II. (By order dated June 3, 2002, the Court dismissed the complaint as to all other defendants pursuant to 28 U.S.C. § 1915(e)(2)(B).)

On May 23, 2001, Hardy injured his hand while opening a box. He showed his swollen hand to a correctional officer, who surmised that it was broken. The officer called a sergeant, who promised to send someone from the health care unit to look at Hardy's hand, but no one from the health care unit visited Hardy that day or night. The next morning, Hardy showed his hand to a medical technician who was making rounds. The medical technician told Hardy he would be x-rayed that morning, but he was not called to the health care unit until the early afternoon. *Id.*, p. 6.

Hardy saw Dr. Aguinaldo around 12:30 p.m. and then had to wait an hour longer to get an x-ray. *Id.* Hardy waited again in a holding cell; eventually, Dr. Aguinaldo passed by and told Hardy that he would be seen by "the bone doctor" the next day. But shortly thereafter, the medical technician informed Hardy that he could not receive any further treatment until after he had been seen by Internal Affairs, which, according to the technician, was required to investigate such incidents of injury. *Id.*, p. 8.

The next day, Hardy was neither called to Internal Affairs nor seen by the medical staff. Finally, that evening a medical technician went to Hardy's cell and reported that x-rays had confirmed that his hand was, in fact, broken. The technician expressed surprise that Hardy had not been seen by an orthopedic specialist or had his hand splinted. She assured Hardy that he would "definitely" be called to the health care unit on May 27, 2001. *Id.*

Hardy complained to prison officials, who once again told him that he could not go to the

hospital until after he talked to Internal Affairs. Hardy insisted that he was willing to talk to Internal Affairs and was only waiting to be called or visited by an investigator. *Id.* Hardy went without a splint, a cast, or any pain medication until June 11, 2001, almost three weeks after he injured his hand. *Id.*, pp. 10-11. At least as of the date Hardy filed this suit (May 20, 2002), over a number of months had elapsed and he still had not been seen by an orthopedic specialist. (*Id.*, p. 10.

On or about June 26, 2001, Hardy consulted Dr. Aguinaldo regarding a burning sensation in his stomach, advising the doctor that he had acid reflux disease. He told the doctor that prior to his transfer to Stateville, a medication called Tagamet had worked well for him, but that the Zantac he was prescribed after his placement at Stateville did not help his condition. Dr. Aguinaldo promised to re-order the Tagamet and to arrange for Hardy to undergo an upper gastro-intestinal examination to verify whether his stomach pains were in fact caused by acid reflux. However, over a month passed before Hardy was prescribed Tagamet. An upper gastro-intestinal x-ray was taken on an unspecified date, but Hardy was never informed of the results. *Id.*, pp. 11-12.

The burning sensation in Hardy's stomach worsened, and he began to suffer cramping and sharp pain. When he complained to Dr. Aguinaldo about his symptoms, the doctor only said, "I gave you Tagamet & a U.G.I. What more do you want me to do?" Eventually, Hardy's psychiatrist arranged to have him tested for helicobacter pylori, a bacterial infection that affects the stomach lining. The test results came back positive for helicobacter pylori on September 5, 2001, but Dr. Aguinaldo provided no treatment until October 10, 2001, despite repeated requests from Hardy. Even then, the medication lasted only two weeks and Dr. Aguinaldo failed to renew

3

the prescription, notwithstanding the return of Hardy's painful symptoms. As of the date of this lawsuit, well over a month had passed and Dr. Aguinaldo had failed either to schedule Hardy for a check-up or to re-order his medication. *Id.,* pp. 12-14.

Throughout the relevant time period, Hardy says, he filed "countless" grievances. *Id.,* p. 15. He has attached copies of a number of grievances both to his complaint and to his memorandum in opposition to the defendants' motion for summary judgment. With regard to his hand, a grievance dated May 28, 2001 reflects no response. A second grievance dated June 10, 2001 likewise reflects no response. A grievance dated June 11, 2001 was denied at the institutional level after a significant delay; the counselor's response, made some five months later, stated, "Old fx. [fracture]. Ortho consult not indicated. Resolved." A subsequent grievance dated January 25, 2002, was denied as time-barred. The counselor wrote,

> Your grievance is untimely. I checked with the grievance officer, who stated those past grievances were returned to you because they were filed as emergency grievances and were denied as emergency grievances. You never filed them thru regular channel and no grievance could be located recommending ortho evaluation.

On July 2, 2001, Hardy filed a grievance concerning both his hand and his stomach problems. The counselor responded, "This medical issue is being forwarded to the Medical Dept. for appropriate disposition. 9/18/01 medical records show that a second prescription for Tagamet was ordered on 7/30/01." On September 26, 2001, Hardy filed another grievance stemming from his continued dissatisfaction with his treatment or lack of treatment for his hand and stomach. The counselor noted, "This medical issue is being forwarded to the HCU for appropriate disposition. Will have Dr. Aguinaldo rewrite for prescriptions originally ordered but not delivered on 10-9-01. All meds delivered & signed for on 10/10/01–resolved." Another

4

grievance dated October 1, 2001, and relating to Hardy's stomach condition garnered the following response, "This medical issue is being forwarded to the H.C.U. for appropriate disposition. See 1st grievance – resolved."

An appeal to the Administrative Review Board was returned to Hardy on February 21, 2002. Hardy was advised, "Need to provide Grievance Officer's report and/or send G.O.'s final report." The appeal was in reference to "medical treatment" but did not specify which medical issue Hardy was attempting to appeal.

Defendant Miller has submitted an affidavit in support of summary judgment in which she states that she lacks any involvement with the plaintiff or in the medical care of any particular inmate. Miller, a registered nurse, appears to indicate that she deals with inmate complaints about medical treatment, but she says nothing about any of Hardy's grievances, other than to describe, in a single sentence, her general practice of investigating such complaints and reviewing them to the medical director (a medical doctor) and/or the attending physician. She states that she did not direct anyone to deny medical treatment to Hardy.

## Discussion

Defendants argue that Hardy failed to exhaust internal administrative remedies prior to filing suit and that there is no evidence that they acted with deliberate indifference to his serious medical needs. We address these arguments in turn.

1. **Exhaustion**

The Prison Litigation Reform Act of 1996 provides that "[n]o action shall be brought with respect to prison conditions ... by a prisoner ... until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). "[I]f a prison has an internal administrative

5

grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim" under 42 U.S.C. § 1983. *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999), *cert. denied*, 532 U.S. 1065 (2001).

Defendants argue that Hardy did not pursue a proper appeal of any of his grievances to the Administrative Review Board. As a general rule, an inmate must comply with the rules established by the State with respect to the form and timeliness of grievances. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002). But in this case, unlike in *Pozo*, Hardy alleges that he received no response to several of his grievances. The Seventh Circuit has recently held that prison officials' failure to respond to an inmate's grievances renders administrative remedies "unavailable" and excuses the prisoner from pursuing them further. *Lewis v. Washington*, No. 00-2017, ___ F.3d ___, 2002 WL 1843329 (7th Cir. Aug. 21, 2002).

Second, Hardy was granted–or ostensibly granted–the basic relief sought at the institutional level. On at least three separate occasions, the plaintiff's grievances were forwarded to the health care unit for "appropriate disposition" and were deemed "resolved." As the Seventh Circuit has stated,

> Requiring a prisoner who has won his grievance in principle to file another grievance to win in fact is certainly problematic. Although the time spent in exhausting administrative remedies is tolled for purposes of limitations on filing a federal complaint . . . this would be cold comfort to a prisoner caught in some never-ending cycle of grievances. For, if a prisoner who wins on his initial grievance must file one further grievance to get practical relief, what is to prevent the prison system from repeatedly failing to follow through and requiring the prisoner to endlessly seek a real resolution?

*Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002) (internal citation omitted). Although *Dixon* dealt with multiple grievances as opposed to the appeal process, the same reasoning applies in

6

this case.

The combination of these two factors defeats defendants' non-exhaustion argument. The evidence indicates that Hardy's grievances reflect that they were ignored or deemed "resolved." It appears that Hardy did the best he could to bring his problems to the attention of the authorities at Stateville through the grievance process, and under the circumstances the Court finds that he satisfied the PLRA's exhaustion requirement as to both of his claims.

### 2. Personal involvement of Miller

Defendant Miller argues that she is entitled to summary judgment because Hardy lacks evidence of her personal involvement in the alleged deprivations of his constitutional rights. "Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996). To establish Miller's liability, Hardy must show that she was personally involved in the deprivations or that those deprivations occurred at her direction or with her knowledge and consent. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

Miller's position as health care administrator is not a sufficient basis to support a claim against her. And there is no reason to doubt her claim that she had no direct involvement in treating Hardy. But Miller (whose affidavit does not actually describe what her responsibilities are) appears to be involved in dealing with inmate complaints about lack of medical care, and she does not squarely deny having dealt with Hardy's grievances. Viewed in light of Hardy's evidence indicating that at least some of his grievances were ignored – resulting in further delays or denial of treatment – the Court cannot say that Miller's affidavit is sufficient to establish that

7

she is entitled to judgment as a matter of law. Plaintiff is a *pro se* litigant who only recently filed this suit and has had no opportunity to take any discovery. Under the circumstances, Miller is not entitled to summary judgment at this time.

### 3.     Deliberate indifference - Dr. Aguinaldo

A prison health care provider's deliberate indifference to an inmate's serious medical condition violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the health care provider must be subjectively aware of and consciously disregard a risk to the inmate's health or safety. *Farmer*, 511 U.S. at 837; *Sherrod*, 223 F.3d at 610. Hardy has made a showing on both aspects of the standard that is sufficient to avoid entry of summary judgment.

Dr. Aguinaldo does not contest that a broken hand constitutes an objectively serious medical need. Hardy's helicobacter pylori infection is likewise an arguably serious condition because, untreated, it allegedly caused sharp pain, burning and cramps. *Compare Sherrod*, 223 F.3d at 610 (inflamed appendix was objectively serious); *Zentmeyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000) (an ear infection, though a "common malady," could be deemed objectively serious where it "inflicted prolonged suffering" and required extensive treatment); *see also Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (a condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of.

Dr. Aguinaldo nevertheless contends that there was no deliberate indifference because

8

mere disagreement with a physician's treatment does not implicate the Eighth Amendment. Neither medical malpractice, *Steele v. Choi*, 82 F.3d 175, 178-79 (7th Cir. 1996), nor dissatisfaction with a doctor's prescribed course of treatment, *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996), gives rise to an Eighth Amendment claim. But Hardy maintains that he was essentially denied basic, needed medical care; he does not simply demand a particular treatment.

The subjective element of deliberate indifference encompasses conduct such as the refusal to treat a prisoner's chronic pain, *Jones v. Simek*, 193 F.3d 485 (7th Cir. 1999), the refusal to provide pain medication prescribed by a doctor, *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999), or erroneous treatment based on a substantial departure from accepted medical judgment, practice, or standards. *Sherrod*, 223 F.3d at 611; *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). The fact that a prisoner received *some* medical attention does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by "woefully inadequate action" as well as by no action at all. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999).

Hardy contends that he was denied both pain medication and needed treatment for a broken hand for three weeks, and that follow-up care, including a recommended visit to an orthopedic specialist, was similarly delayed or denied altogether. Though Dr. Aguinaldo originally honored Hardy's request for a new prescription to control his stomach virus, Hardy contends that the doctor ignored his repeated requests to renew the medication or look into the source of his symptoms. A reasonable fact finder could infer from this that Dr. Aguinaldo acted with deliberate indifference. At this stage of the proceedings – particularly in view of Hardy's *pro se* status and his inability to conduct discovery up to this point – the record does not support

9

entry of judgment in favor of Dr. Aguinaldo.

4. **Plaintiff's motion for access to law library**

Hardy has submitted a letter motion for an order granting him access to the Stateville law library. The law certainly entitles an inmate to access to a law library sufficient to enable him to research the law to determine what facts are necessary to state a cause of action, perform basic research, formulate legal theories, and get through initial stages of lawsuit. *See, e.g., Smith v. Shawnee Library System*, 60 F.3d 317, 322 (7th Cir. 1995); *Brooks v. Buscher*, 62 F.3d 176 (7th Cir. 1995). But we cannot say at this point that Hardy has been wrongfully denied the necessary access.

Hardy's motion is therefore denied. The Court certifies, however, that Hardy has a civil rights action pending and requests prison officials to grant him reasonable access to the prison library during the pendency of this case. Prison officials may determine the manner that best accommodates Hardy's needs, balanced by penological concerns of safety, security, and orderly administration.

As a final concern, Hardy is reminded that he must comply with the Court's basic filing requirements. He is required to provide the Court with the original plus a complete judge's copy of every document filed and to mail to defense counsel a copy of every document filed with the Court. Every document filed with the Court must include a certificate of service showing that a copy was sent to opposing counsel. The Clerk will provide the plaintiff with another copy of the court's filing instructions. In the future, the Court will not consider documents that lack a proper certificate of service.

## Conclusion

For the foregoing reasons, the Court denies defendants' motion for summary judgment (docket item #9) and also denies plaintiff's motion for a formal order regarding access to the law library (docket item #21). Counsel for defendant Miller is directed to advise the appropriate prison officials of the Court's request that they grant Hardy reasonable use of the resources of the prison library during the pendency of this action.

Date:   September 10, 2002

　　　　　　　　　　　　　　　　　　　　　　MATTHEW F. KENNELLY
　　　　　　　　　　　　　　　　　　　　　　United States District Judge